Ruffin, C. J.
 

 For any sum which the plaintiff might have paid, or might be liable to pay, as a surety for his sons on the bond for the purchase money of the land, he had an equity to be re-imbursed or exonerated by a sale of the land ; and to that end,- he had a right to file his bill to prevent a conveyance to the purchasers by the vendor, who had kept the title, as a security for the purchase money
 
 Green
 
 v.
 
 Crockett,
 
 2 Dev. & Bat. Eq. 390.
 
 Polk
 
 v
 
 Gallant,
 
 Id. 395. The title is still under the control of the Court: and, therefore, the enquiry is, how far the plaintiff is to be regarded as the surety of his sons. It is agreed on all hands, that the sons made the purchase, and that the fathers-in law executed the bond in the character of sureties to some extent. The plaintiff, however, admits, that he undertook to pay $250, of the purchase money, as an advancement for his sons; and he says, that upon selling the piece of land for $300, from which he expected to raise the $250, he agreed to give the whole price as an advancement, to be applied as a payment from him on the bond. For that sum, the plain
 
 *42
 
 tiff seeks, and could have, no redress. Undoubtedly he could have no recourse on his sons for a sum thus voluntarily assumed, and voluntarily advanced as a gift. We are not prepared to say, that, after agreeing with his sons and the father-in-law of one of them, to advance a certain proportion of the purchase money, and thereby inducing the sons to make the purchase, and the father-in-law to agree also to advance a sum, towards paying for it, the plaintiff could, before the payment, retract his undertaking, but would not be compellable to make it good. However, it is not necessary to consider that point, nor how far the plaintiff might be discharged from his obligation by a fraud on the agreement on the other side, in making, with the funds of the son Stephen, the pay. ment which his father-in-law was to make out of his own funds as an advancement to Stephen. For, as the pleadings stand, and upon the. proof, it must be found, in point of fact, we think, that the $300, received for the land from Drury Smith, was a payment made on the bond by the plaintiff, and that he did not undertake to make any further payment on it, by way of advancement to either of his sons, or was bound therefor, except asa surety. Several considerations concur to produce that conclusion. In the first place, the bill admits no further responsibility to have been assumed by the plaintiff; and it affirms, that the land, from the sitie of which, the money was raised, belonged to the plaintiff, and was sold by him, to enable him to meet his engagement on the bond. In both respects the burden of proving to the contrary is on the defendants; and they havo entirely failed to give any such proof. The burden is on them, because, as the purchasers of the land, they are
 
 prima facie
 
 the principal debtors for the price. The furthest
 
 the law has gone,
 
 in presuming a gift from the father to the child, is, when the father paid’, or secured the price, anc! took a conveyance in the name of the child. In that case it is inferred, that the advancement of the child was intended, and no trust
 
 *43
 
 results to the father on account of the purchase money being his.
 

 But where no conveyance is executed, and the child makes the contract of purchase, and all the father does, is to join in the bond for the purchase money, there can be no presumption that the father was to pay the price, as a gift to the child ; else, every responsibility, incurred by a parent, for and with a child, is to be held as making the former the principal, and the latter only the surety; which is against the common experience of the course of business. So, in regard to the ownership of the land sold to Drury Smith, and of the money got for it, it must be deemed to have been, in fact and truth, in the plaintiff, as it was legally his, unless there be evidence on the other side to establish, that he had previously given the land to his sons, and that his concurrence in the sale to to D. Smith was merely formal, in order to pass the legal title. The answers state the last to be the truth ; but they cannot divest the plaintiff of his estate, without proof
 
 aliunde ;
 
 and no such proof appears. On the contrary, the defendant, Andrew Martin, senior, is represented by the witness. Smith, as making the first proposition to sell to him the land in Henry, and as then stating, not that it had been given by the plaintiff to his sons, before they made their purchase, but that he “ had given it to them” (in consequence of their purchase) “ to sell for the best price they could, to help to pay for it,” that is, for the land they bought. The same inference results from the dealings of the defendant, Stephen, and his father, with Drury Smith, as deposed by that witness. Throughout, the father acted, and was treated by the other two, as the real owner and vendor of the land, who was entitled to, and received the purchase money, and disposed of it. And it is clear from the declarations of the son in that negotiation, that no further contribution was intended by, or expected from the plaintiff, besides the sum obtained for that land $ for he said, the defen
 
 *44
 
 dant Martin owed him enough to enable him, with
 
 the $300,
 
 paid by the witness, to pay for the land within $300, and he applied to the witness to lend him and his brother that sum, for that purpose.
 

 The payment of the SS300 on the bond, then, was not made with funds belonging legally or equitabty to the sons, as far as appears, but with the money of the plaintiff ; and, therefore, he fully complied with the whole of the undertaking on his part, as far as any is established. Another consideration strongly corroborates this view of the subject. It is plain upon the answers themselves, that by the agreement between the parties, the advancement, which the plaintiff was to make, was to be compensated by one to an equal amount in favour of Stephen Smith, by his father-in-law, and by means of those two advancements, and the sum of $300, to be paid by the two sons, expected to be raised from the sale of the land, previously given to them by the plaintiff, the answers say, the debt was to be paid. Now, it has been already shewn, that the sum got for that land did not belong to the two sons ; and, therefore, it must have been understood, that the payment, to be made by them, was to come from a different quarter. What the quarter was, cannot be doubted The debt of the defendant Martin to Stephen was known, not, perhaps, in its exact amount, to all parties, and was, unquestionably the source relied on for the payment, which was to be made by the sons with their own means, leaving the brothers afterwards to settle between themselves for the difference in their advances. This must have been so, since no other resource is suggested, and because the defendant, Stephen, expressly declared as much to Drury Smith. But those defendants say, that the sum of
 
 $350,
 
 which Martin paid on the bond in May 1843, was his, Martin’s, money, and was paid by him as an advancement to his son-m-law, and that no part of it belonged to the son-in-law, although it extinguished the debt from his father-in-law to him, or,
 
 *45
 
 in the language of the answer,
 
 “
 
 closed their private accounts ” The Court cannot be so blind, as not to see, that the transaction, in that respect, was not a fair one, and that the account given of it in the answers is imperfect, uncandid, and unsatisfactory ; intended to give a false coloring to the payment. We are obliged to perceive, that the payment in the name of the father-in-law was illusory, and that, in realify, it'was with the funds belonging, perhaps, wholly, and at all events, nearly so, to the son-in-law. Taking, then, that payment to be made by the defendant, Stephen, and not by Martin, it follows necessarily, that the payment, which Martin agreed to make as an advancement, is yet to be made; and if made, there would be nothing left to be paid by the plaintiff, even had an agreement been established against him to pay more than the proceeds of the land in Henry.
 

 Upon the whole, therefore, the Court holds, that the plaintiff was entitled to be relieved from any further payment on this debt, by compelling the defendants, or some of them to discharge the balance due on it. From what has been said, it will-have been perceived, that in our judgment, the defendant, Andrew Martin, the elder, ought in justice to pay it; and we should be obliged to examine his liability for it, in this Court, if the other two defendants had insisted on it. But, as they have chosen , to consider the payment of the $350, as a payment by him, in satisfaction of the advancement promised by him, and to discharge him from all further liability, and thereby to take that much of the debt on themselves, we suppose it must be so, and that the law cannot force those persons, against their will, to look 'to him for this money. With that question, the plaintiff has no concern at present; nor will he have any, unless he should be unable to get back the money, he has paid, out of the land, or from his sons, the principal debtors. If that should so turn out, the plaintiff would, at all events, have a claim for contribu
 
 *46
 
 tion on Martin, as his co-surety; and, perhaps, for a full indemnity upon the ground, above mentioned, of his agreement with the plaintiff to make an advancement to his son in-law, equal to that made by the plaintiff for his sons. Reserving those points, however, it is only necessary at present to declare, that the defendants, Stephen and David, are bound to repay to the plaintiff, the debt, interest, and costs at law and in equity, which he paid on the dissolution of the_ injunction in this cause, and, in case they should fail to do, in a reasonable time, that the plaintiff will be entitled to have the same raised by the sale of the land, purchased from Andrew Martin the younger. There must be a reference to enquire what sum is due to the plaintiff on those accounts; and in the mean while, the defendants must pay the plaintiff his costs incurred in this cause, up to this time. '
 

 Pee Curiam.
 

 Decree accordingly.